IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE<br><br>CONSEJO DE TITULARES DEL CONDOMINIO TOUCHVISION PLAZA<br><br>Debtor | CASE NO. 26-02205 (ESL)<br><br>CHAPTER 11<br><br>FILED AND ENTERED 11/6/2026 |

**OPINION AND ORDER**

This case is before the court upon the *Motion to Dismiss Chapter 11 Petition for Lack of Legal Authorization and Authority to File* filed on June 16, 2026, by the Estate of Richard Machado González (the "**RMG Hereditary Estate**") and Norma Machado Ortiz ("**Machado**", and together with the RMG Hereditary Estate, the "**Movants**") (the "**Motion to Dismiss**", dkt. #16), Debtor's opposition thereto (dkt. #55), Movants' reply (dkt. #61), the pre-trail reports filed in connection therewith (dkt. #80), the hearing held on August 10, 2026 (the "**Hearing**")[1], Debtor's supplement (the "**Supplement**", dkt. #95), and Movants' opposition thereto ("**Opposition to Supplement**", dkt. #100).

For the reasons stated herein, the *Motion to Dismiss* (dkt. #16) is DENIED.

Factual and Procedural Background

1. On or about 2005, Touchvision Plaza (the "**Condominium**") was organized as a Condominium pursuant to Act. No. 104 of 1958, 31 L.P.R.A. §§ 1291 *et seq.*, known as the Puerto Rico Condominium Act (the "**Condominium Act of 1958**").

2. On May 26, 2025, the Council of Owners held a Special Meeting "to select the Condominium's first Board of Directors" (dkt. #55, ¶ 20). See *Minutes of Regular Meeting [Held on May 26, 2025]*, dkt. #55-2, pp. 1-3 (Certified Translation).

3. On April 23, 2026, the Board of Directors (the "**Board of Directors**" or "**Board**") of the Consejo de Titulares del Condominio Touchvision Plaza (the "**Council of Owners**" or "**Council**") unanimously voted to authorize and order its Presidents, Mr. Osvaldo Carlo Linares,

[1] See *Minutes of Hearing Held on August 10, 2026*, dkt. #86.

to file a petition for relief under Chapter 11 of the Bankruptcy Code. See *Certificate of Resolution*, dkt. #1-1.

4. On May 14, 2026, the Debtor filed a petition for relief under Subchapter V. See dkt. #1. Attached to the petition is the *Certificate of Resolution* dated April 23, 2026, executed by Wanda Carlo Linares, Secretary of the Board of Directros

5. On May 15, 2026, the Council of Owners held a Special Meeting of the Owners to "organize and approve the first budget ever for the Condominium" (dkt. #55, ¶ 21). During said meeting, a budget was approved, and the bankruptcy filing was **ratified** and **approved** by a unanimous vote of the Council of Owners with voting rights. See *Minutes of Special Meeting [Held on May 26, 2026]*, dkt. #55-2, pp. 4-6 (Certified Translation).

6. On June 16, 2026, Movants filed a *Motion to Dismiss* (dkt. #16), seeking dismissal for "cause" under 11 U.S.C. § 1112(b), arguing that the bankruptcy petition was filed without proper corporate authority. Movants argue that under Article 51 of Act No. 129 of 2020, 31 L.P.R.A. §§ 1921-1923r, known as the Puerto Rico Condominium Act (the "**Condominium Act of 2020**"), extraordinary matters impacting the financial framework are reserved solely to the jurisdiction of the Council of Owners and that filing for Chapter 11 relief constitutes an extraordinary administrative and structural event. "Because no assembly meeting took place, the Board acted *ultra vires* and completely bypassed the mandatory democratic processes established by the PR Horizontal Property Law"(dkt. #16, p. 7, ¶ 16).

7. On July 30, 2026, the Debtor filed a *Response in Opposition to Motion to Dismiss at Dkt. No. 16* (the "**Opposition**", dkt. #55) detailing the emergency that prompted the filing of the bankruptcy case[2], and arguing that the Board of Director followed the Condominium Act to protect the interests of all commercial owners, and that Articles 53 and 54 of the Condominium

[2] Debtor avers that "[d]ue to the ongoing deterioration of the Touchvision Plaza, especially due to the lack of electricity and the extremely high cost of maintaining an electrical generator for the daily operations, the Board of Directors through its President, Osvaldo Carlo took the very difficult decision to file a petition for bankruptcy under Chapter 11 (Subchapter V) for the protection of the interests of all commercial owners. Needless to say, the building was in an emergency situation." dkt. #55, ¶ 25.

Act[3] provide sufficient powers to justify the Board's actions. Debtor argues that the Puerto Rico Supreme Court directly entertained the legal issue before this court in Consejo de Titulares Ponceñas v. Galerias Ponceñas Incorporado, 145 D.P.R. 315 (1998)[4], as follows:

> Professor Michel Godreau has expressed himself on the subject at hand. In his opinion, requiring a Chairman of a Board of Directors to have the prior approval of the Board of Directors to initiate a judicial process should depend on the type of legal action in question. *Michel J. Godreau*, *Personality of the Juridical Body*, *supra*, at p. 495. It states that although the best practice would be to obtain the prior consent of the Council of Owners to initiate an action, there may be instances in which it is necessary to go to court in a hurry, so it is entirely reasonable to go to court without notifying the owners. However, it advises that in such cases "the Board or the President should act in accordance with the standards of reasonableness and sound administration and decide on the course to be followed, trying to notify the Council with the urgency that the case merits.
>
> … "[i]n any case [...] the President or the Board, as the case may be, must ensure that the Council of Owners ratifies its management". Id.
>
> In this context, and in view of the multiple and diverse situations that may arise in the management of the affairs of a building subject to the horizontal property regime, Godreau proposes the following alternative:
>
>> The best viability of the interests of the Horizontal Property Regime is achieved by establishing a rebuttable presumption that the Board or the President of the Condominium are authorized by the Council of Owners when they initiate the action on behalf of the Council or when they appear in defense of it. As a rebuttable presumption, it must be subject to challenge. Note that this presumption does not defeat the need for the President or the Board to obtain the consent of the Council. To say that authorization is necessary does not mean that accreditation of authorization is a sine qua non condition for the President or the Board to appear in court. The function of the presumption is actually to facilitate relations between the Council vis-à-vis third parties. Only in cases where the other party to the dispute reasonably disputes the absence of authorization would we consider it necessary prove it. Id. at p. 496 (emphasis supplied) (footnotes omitted).

---

[3] "Condominium Act", as defined in the *Opposition*, refers to the Condominium Act of 1958.

[4] An official English translation of Galerías Ponceñas is not available, and a certified English translation was not submitted. This court may only consider the merits of those documents filed in the English language.

> We recognize that this alternative could safeguard the power of the Council of Owners, as the supreme body of the regime, against the possibility of actions of the Board of Directors that are not endorsed by the majority of the owners. However, we consider that a reading of the text of the law reveals that the power of the President of the Board of Directors to go to court without the prior consent of the Board of Owners is reasonably implicit, at least, in those powers that the law expressly delegates to it.

dkt. #55, pp. 10-11 (Debtor's Unofficial and Uncertified Translation of Galerias Ponceñas, 145 D.P.R. at 330-331).

8. On August 5, 2026, Movants filed a *Reply to Debtor's Opposition to Motion to Dismiss* ("**Reply**", dkt. #61) arguing that under Article 53, the Board of Directors is strictly the "executive organ" of the community of owners whose statutory powers are limited to ordinary administrative oversight, executing approved budgets, enforcing rules, and directing routine property maintenance. Movants argue that Article 54 authorizes the President to represent the regime in ordinary litigation to enforce the law, the bylaws, or existing Council resolutions, or to defend the regime when sued, and does not grant the President or Board the independent sovereign power to execute an extraordinary corporate act. Movants argue that Articles 49 and 54 imposes strict limitations on the execution and powers of the Board of Directors even in situations involving urgent or emergency measures, requiring "[m]andatory prior authorization from the Council of Owners assembled in an extraordinary assembly" (dkt. #61, ¶ 18). Movants posit that "[i]f the executive Board lacks statutory authority … to unilaterally perform extraordinary repairs, execute emergency actions, disburse reserve funds, or settle disputes exceeding $5,000 without express Council consent, a fortiori, the Board possesses zero legal authority to execute an extraordinary action of unprecedented proportion: surrendering the Regime's financial governance and property rights to a federal bankruptcy court without prior Council authorization. Filing a voluntary Chapter 11 petition fundamentally transforms the legal status and governance of the Debtor, while directly impacting the Horizontal Property Regime. Upon filing, a completely new legal entity—the Debtor in Possession—is created, also instantly creating a bankruptcy estate under that operates under strict federal court supervision rather than ordinary state corporate governance. As a result, the Board can no longer act solely in the interest of the coowners under

the PR Horizontal Property Law. The Board's legal duties fundamentally shift to encompass federal fiduciary obligations to the estate and the bankruptcy court. By placing the Regime's assessment revenue streams, common assets, operational decision-making, and executory contracts under federal bankruptcy jurisdiction, the filing severely encumbers the co-ownership structure and alters how unit owners exercise their statutory property rights" (dkt. #61, ¶¶ 19-20). Movants further argue that "Galerías Ponceñas confirms that the Board possesses no independent corporate existence or legal personality separate from the Council of Owners. Because the Board's authority is entirely derivative of and subordinate to the Council … the Board cannot execute an extraordinary corporate act—such as filing for Chapter 11 bankruptcy—without the express, prior authorization of the Council of Owners" (dkt. #61, ¶ 24). Lastly, Movants argue that the record reflects "an accumulation of badfaith factors" requiring immediate dismissal under Section 1112(b) (dkt. #61, ¶ 29).

9. On August 10, 2026, the court held a Hearing to consider the *Motion to Dismiss*. See *Order and Notice*, dkt. #22, 36; *Joint Pre-Hearing Report on Motion to Dismiss* (dkt. #80), *Pre-Trial Report Exhibits*, dkt. #76; *Minutes of Hearing Held on August 10, 2026*, dkt. #86. The Debtor was ordered to supplement its position as to the Board of Directors' authority to file the instant petition under the Puerto Rico Condominium Act of 2020.

10. On August 25, 2026, the Debtor filed its *Supplement* ( dkt. #95), arguing that Articles 53 and 54 of the Condominium Act of 2020 "grant[] substantially the same authority to the Board of Directors and its President as the prior Condominium Law" (dkt. #95, p. 3), and that the Puerto Rico Supreme Court concluded (under the prior act) that "a reading of the text of the law reveals that the authority of the President of the Board of Directors to appear in court without the prior consent of the Council of Owners is reasonably implied, at least, from those powers expressly delegated to it by law." dkt. #95, p. 2, citing Galerías Ponceñas, 145 D.P.R. at 331 (Debtor's translation)[5]. Debtor further argues that:

[5] Ibid.

> the Court may readily conclude that the duties and responsibilities granted to the Board of Directors under the current Condominium Act "necessarily imply the power to go to court on behalf of the community of owners in order to demand compliance with the provisions of the Law of Horizontal Property with respect to matters that affect it and in relation to which it decides to act in accordance with the legal capacity that is recognized for it." *San Juan Health Centre v. P.R.F., Inc.*, 133 P.R. Dec._ (1993). The Board acted to protect the assets of the Council of Owners, including by seeking the restoration of essential services at Touchvision Plaza. The restoration of those services would not have been possible outside the bankruptcy process …
>
> The Board acted in accordance with the Condominium Act and the legal doctrines established by the Puerto Rico Supreme Court, not only in *Galerias Ponceñas*, but also in *Noriega Rodríguez v. Hernández Colón*, 135 D.P.R. [406] (1994)[[6]]; *Hernández Torres v. Hernández Colón*, 129 D.P.R. [824] (1992)[[7]]; *Colegio de Ópticos v. Vani Visual Center*, 124 D.P.R. 559 (1989)[[8]]; *Condominio Profesional San Juan Health Centre v. P.R.F. Inc.*, 133 D.P.R. [488] (1993)[[9]]; and *Consejo de Titulares v. Vargas*, 101 D.P.R. 579, 587 (1973)[[10]]. The Board was elected by the Council of Owners of Touchvision Plaza. Accordingly, under the Condominium Act, the Board's actions are presumed to have been authorized by the Council of Owners because they were taken for the benefit of the Condominium. The Movants have not rebutted that presumption in this case. The Board notified the Council of Owners of the filing on the day after the petition was filed. Thereafter, the owners with voting rights ratified the Board's decision.

dkt. #95, pp. 4-5. Debtor did not address whether post-petition ratification by the Council of Owners cures any deficiency in the filing of the petition.

---

[6] An official English translation of <u>Noriega Rodríguez v. Hernández Colón</u> is not available, and a certified English translation was not submitted. This court may only consider the merits of those documents filed in the English language.

[7] An official English translation of <u>Hernández Torres v. Hernández Colón</u> is not available, and a certified English translation was not submitted. This court may only consider the merits of those documents filed in the English language.

[8] An official English translation of <u>Colegio de Ópticos v. Vani Visual Center</u> is available. <u>See</u> 1989 PR Sup. LEXIS 146 (1989). There, the Puerto Rico Supreme Court held that the College of Opticians of Puerto Rico, Inc. and the Association of Opticians and Optics Laboratory Technicians, Inc., had standing to file a petition for injunction on behalf of the licensed opticians who are members of their respective organizations. The case is thus inapposite.

[9] An official English translation of <u>Condominio Profesional San Juan Health Centre v. P.R.F. Inc.</u> is not available, and a certified English translation was not submitted. This court may only consider the merits of those documents filed in the English language.

[10] An official English translation of <u>Consejo de Titulares v. Vargas</u> is available. <u>See</u> 1973 PR Sup. LEXIS 225 (1973). There, the Puerto Rico Supreme Court held that the unanimous consent of co-owners is required to construct additional floors on a condominium. The case is thus inapposite.

11. On September 1, 2026, Movants filed an *Opposition to Supplement* (dkt. #100), arguing that the Board of Directors cannot execute an extraordinary, sovereign act like filing for Chapter 11 without explicit prior Council of Owners authorization. Movants argue that "the legal commentary cited in Galerías Ponceñas—specifically Prof. Michel J. Godreau, Personalidad Jurídica, Legitimación Activa y Propiedad Horizontal, 64 Rev. Jur. U.P.R. 481 (1995)[11]—explicitly limits a Board President's implied authority to routine judicial proceedings aimed at enforcing bylaws or collecting fees. Prof. Godreau emphasized that any presumption of authority is strictly rebuttable and applies to routine administrative matters, not extraordinary corporate acts that encumber the regime." (dkt. #100, p. 4, ¶ 12). Movants argue that Debtor's interpretation is an improper expansion of the Board of Directors' implied powers, and that the power to "go to court" to enforce bylaws or collect maintenance fees cannot be stretched to include the unilateral authority to file a bankruptcy petition. With respect to Article 54 cited by Debtor, Movants argue that it cannot be read in a vacuum to grant carte blanche executive power without constraints. "To hold that Article 54 creates an irrebuttable, standalone authority to file Chapter 11 bankruptcy would completely eviscerate the Council of Owners' statutory supremacy under Article 48 and render all statutory voting requirements in Act No. 129-2020 meaningless" (dkt. #100, p. 10, ¶ 35). Movants argue that pursuant to Articles 48, 49 and 50 of the Condominium Act of 2020, the Council of Owners holds exclusive authority over extraordinary governance decisions that alter co-owner property rights, encumber common elements, or modify financial structures. "All extraordinary decisions that alter the financial framework, master budgets, common elements, or legal status of the regime are reserved exclusively to the Council assembled in a duly convened general meeting" (dkt. #100, p. 8, ¶ 29). And, that "[t]o prevent executive overreach, Act No. 129-2020 expressly restricts the autonomy of the Board of Directors even in urgent or emergency situations to requiring mandatory prior authorization from the Counsel of Owners, citing Articles

[11] An official English translation of Personalidad Jurídica, Legitimación Activa y Propiedad Horizontal is not available, and a certified English translation was not supplied. This court may only consider the merits of those documents filed in the English language.

49 and 54. With respect to whether a lack of authority to file for bankruptcy may be cured post-petition, Movants argue that it cannot and the court lacks discretion and must dismiss the petition.

Legal Issue

The issue before the court are (i) whether the Board of Directors had authority to file the instant petition for relief on behalf of the Council of Owners under the Condominium Act of 2020, despite the Council of Owners not having approved such filing prior to the petition date; and, (ii) whether a post-petition ratification by the Council of Owners cures any deficiency in the filing of the petition.

Applicable Law and Discussion

A. English Language Requirement in the Federal Courts in Puerto Rico

It is well settled that the law incontrovertibly demands that federal litigation in Puerto Rico be conducted in English", in accordance with 48 U.S.C. § 864. Banco Popular de P.R. v. Santiago-Salicrup, 630 B.R. 374, 378 (D.P.R. 2021), citing Estades-Negroni v. Assocs. Corp. of N. Am., 359 F. 3d 1, 2-3 (1st Cir. 2004). See also 48 U.S.C. § 864 ("All pleadings and proceedings in the United States District Court for the District of Puerto Rico shall be conducted in the English language."); L. Civ. R. 5(c) ("All documents not in the English language which are presented or filed, whether as evidence or otherwise, must be accompanied by a certified translation into English…"); P.R. LBR 9070-1(c) ("All Exhibits and documentary evidence in Spanish or other language shall be fully translated to the English language by a certified translator."); In re Bernier, 2022 WL 17096264, at *6-7, 2022 Bankr. LEXIS 3283, at *17-18 (Bankr. D.P.R. 2022) (holding that documents not in the English language should not be considered).

As such, the court may not consider interpretative jurisprudence or treaties for which an official English translation does not exists and a certified English translation has not been supplied.

B. Dismissal of a Chapter 11 Petition for Lack of Corporate Authority

Section 1112(b) of the Bankruptcy Code, 11 U.S.C. § 1112(b), mandates, after notice and a hearing, the conversion or dismissal of a chapter 11 case, whichever is in the best interests of

creditors and the estate, if the movant establishes "cause" and the case is devoid of unusual circumstances pursuant to 11 U.S.C. § 1112(b)(2). See 11 U.S.C. § 1112(b)(1). It is well established that lack of authority to commence a bankruptcy case constitutes "cause" for dismissal. See Price v. Gurney, 324 U.S. 100, 106 (1945) (holding that "if the [bankruptcy court] finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, it has no alternative but to dismiss the petition."). See also Polish-Am. Citizen's Club Inc., 2023 WL 4259266, at *8, 2023 Bankr. LEXIS 1660 (B.A.P. 1st Cir. June 27, 2023) (collecting cases); In re Comscape Telecommunications, Inc., 423 B.R. 816, 829 (Bankr. S.D. Ohio 2010) (collecting cases).

Generally, "[t]he burden of demonstrating cause for dismissal for lack of authority to file is on the movant." Polish-Am. Citizen's Club Inc., 2023 WL 4259266, at *8 (citation omitted). However, because

C. Authority to File a Petition for Relief on Behalf of the Council of Owners

"Condominium associations rarely file for bankruptcy because state laws strictly regulate ... the formation, operation and management practices of condominium associations and their board of directors." Asociacion de Titulares de Cond. Castillo v. Dimarco (In re Asociación de Titulares de Cond. Castillo), 581 B.R. 346, 361, fn. 17 (B.A.P. 1st Cir. 2018)[12] (citation omitted). Condominium associations have nevertheless successfully filed for bankruptcy protection in Puerto Rico and other jurisdictions. See id. Commencement of a case under the Bankruptcy Code is "a specific act requiring specific authorization." In re N2N Com., Inc., 405 B.R. 34, 41 (Bankr. D. Mass. 2009) (citations omitted). Applicable state law determines whether a bankruptcy filing

---

[12] As a preliminary matter, the court notes that one issue before the U.S. Bankruptcy Appellate Panel for the First Circuit ("**Panel**" or "**BAP**") in Cond. Castillo was whether the condominium's board of directors had the unanimous consent of the council of owners to liquidate, as required under Article 2 of the Condominium Act of 1958 for the dissolution of the horizontal property regime. See 31 L.P.R.A. § 1291. The Panel concluded that the board of directors lacked unanimous consent and, therefore, lacked authority to seek relief under chapter 7. See Cond. Castillo, 581 B.R. at 363. Article 4 of the Condominium Act of 2020 contains a similar provision.

Here, however, the Debtor does not seek liquidation under either chapter 7 or chapter 11. Accordingly, dissolution of the horizontal property regime is not presently before this court, and the unanimous-consent requirement governing such dissolution is not applicable.

was authorized. See Price, 324 U.S. at 106 (holding that those "who purport to act on behalf of the corporation" must have "been granted authority by local law to institute the proceedings").

Pursuant to Article 48 of the Condominium of Act 2020, the Council of Owners "constitutes the supreme authority over the administration of the property submitted to the Horizontal Property Regime, and shall be constituted by all owners." 31 L.P.R.A. § 1922t (Official Translation). Pursuant to Article 53 of the Condominium of Act 2020, the Board of Directors "constitutes the executive body of the community of owners". Article 53 further provides that the Board of Directors shall have the following duties and powers:

> (a) To address all that pertains to good governance, administration, surveillance, and operation of the regime, and especially what pertains to the common items and elements and general services, and to such effects, give timely warnings and admonitions to the owners.
>
> (b) To prepare the annual budget in a timely manner and submit it to the Council of Owners … for approval.
>
> (c) To manage the financial matters pertaining to account receivables and payments, and keep an assets and liabilities book with a detailed account, in chronological order, of the receipts and expenditures affecting the property and its administration, specifying the maintenance and repair expenses of the common elements. Both the book and the vouchers accrediting the entries made thereupon shall be available for examination by all the owners at convenient hours on working days that shall be set and announced for general knowledge.
>
> (d) To collect from the owners the amounts they shall contribute to the common expenses and to make all other necessary collections and payments, issuing the corresponding receipts and checks.
>
> (e) To open bank accounts as necessary in the name of the Council of Owners, wherein all the income of the regime shall be deposited upon receipt within the term established in the bylaws; to draw checks against said account to meet all necessary payments, but ensuring they are not drawn to the bearer and that each one has its corresponding receipt or voucher.
>
> (f) To submit for the Council of Owners' approval the financial statements of the last fiscal year … before the date of the meeting where such financial statements shall be submitted for approval.
>
> (g) To manage the upkeep of the property and provide for regular repairs, in accordance with the annual budget approved by the Council of Owners, and adopt

> measures as are necessary upon the approval of the Council of Owners regarding special repairs.
>
> (h) To keep the book of owners. The book of owners may be kept and maintained in any form and manner so as to allow access to the data entered therein, as established by the Board of Directors, whether in paper, electronic, or digital format or as required by any program or application used to store said data.
>
> (i) To comply and enforce compliance with the provisions of this chapter, the bylaws, the master deed, and the agreements of the Council of Owners.
>
> (j) To fill vacancies of members of the Board of Directors subject to revocation by the Council of Owners.
>
> (k) To remove the Managing Agent for good cause. Good cause shall be deemed to be culpable negligence or neglect of duty, dishonesty, or the breach of the codes of good conduct set forth in the bylaws of the condominium, or noncompliance with the duties set forth in the agreement. The Director or the Board of Directors shall call a meeting of the Council of Owners not later than thirty (30) days after the removal to notify said action for the Council to act as deemed convenient.
>
> (l) To establish a payment plan for owners who show not to have the financial capacity to make the payments on account of maintenance fees, special fees, assessments, and/or fines and which payments are past due sixty (60) days or more.
>
> (m) To establish the proper controls and procedures to safeguard the assets of the Council of Owners and comply with all the required obligations and bylaws.
>
> (n) Any other powers assigned thereto in the bylaws or by the Council of Owners.
>
> (o) To keep and protect the documents constituting the Horizontal Property Regime, such as the plans, the master deed, notices of meetings, minutes of the meetings, or any other similar document that should be kept permanently.

31 L.P.R.A. § 1922y (Official Translation) (boldface added).

Article 54 of the Condominium Act of 2020 outlines the duties and powers of the Chair ("*Presidente*" in Spanish) of the Board of Directors as follows:

> The Chair shall represent the community, inside and outside of court, in matters that affect the community …
>
> Regarding actions to enforce this act[ ]or any other applicable law, the bylaws of the condominium, or the agreements of the Council of Owners, or **when the Council of Owners or the Board of Directors shall appear on behalf of the**

> **Council in court as defendant or plaintiff[13], the Chair may appear on behalf of said bodies and file the actions … deemed pertinent, selecting the legal representation he deems convenient, upon consultation with the Board.** The Chair shall notify any actions taken to the owners within the following thirty (30) days.
>
> …
>
> **In any case, it shall be presumed that the Chair of the Board of Directors has been authorized by the Council of Owners to appear on its behalf in the pertinent forums.**

31 L.P.R.A. § 1922z (Official Translation) (boldface added).

Articles 53 and 54 do not expressly reference the filing of a petition for bankruptcy relief or confer authority for the filing of such petitions to either the board of directors, its president, or the council of owners. For the sake of clarity, and because such authority may be conferred elsewhere, the court notes that the Condominium Act of 2020 expressly identifies the acts for which the agreement, approval, or consent of the council of owners, through an affirmative vote—whether by majority, unanimously, or otherwise—is required. These acts include the following: varying the purpose and use of an area (31 L.P.R.A. § 1921c); constituting a mortgage over common areas or elements (31 L.P.R.A. § 1921i); modifying the bylaws (31 L.P.R.A. § 1921m); building upwards or constructing new floors, allocating common areas or elements, modifying an existing regime, excavating basements or cellars, changing the architectural ensemble or exterior appearance, or jeopardizing the soundness or structural integrity of the building (31 L.P.R.A. §§ 1921p, 1922a, 1922q); carrying out work necessary for the maintenance or safety of the property that adversely affects its common elements (31 L.P.R.A. § 1921q); alienating a council element (31 L.PR.A. § 1921r); limiting common areas or elements (31 L.P.R.A. § 1921t); dividing portions of common land conveyed by the council of owners so that they are no longer part of the property's common elements (31 L.P.R.A. § 1922b); amending the master deed or the condominium plans during an interim administration (31 L.P.R.A. § 1922c); changing the exterior

---

[13] The court notes that although the Official English Translation of Article 54 reads "defendant or plaintiff", the original Spanish text reads "demandado o querellado" which correctly translates to "defendant or *respondent*". Under Puerto Rico law, in a case of a discrepancy between the English and Spanish version of a statute, when the legislation originated in Spanish, "the Spanish text shall be preferred to the English." 31 L.P.R.A § 13 (1930) (Official Translation). See Republic Sec. Corp. v. P.R. Aqueduct & Sewer Auth., 674 F.2d 952, 956 (1st Cir. 1982) ("[I]n cases of discrepancy 'the Spanish text shall be preferred.' "). See also 31 L.P.R.A. § 5348 (2020) (Text in Spanish; No English Translation Available).

appearance, decorating or altering walls, doors, or exterior windows using designs, colors, or tones different from those of the development (31 L.P.R.A. § 1922k(5)); designating parking spaces in common elements (31 L.P.R.A. § 1922m); installing equipment in common areas for the benefit and enjoyment of all, some, or one owner (31 L.P.R.A. § 1922p); subdividing apartments (31 L.P.R.A. § 1922r); electing the board of directors or managing agent (31 L.P.R.A. § 1922u); carrying out special, urgent, or improvement works or addressing a state of emergency, with special and urgent works and works addressing a state of emergency requiring prior authorization by a majority of the council of owners, and improvement works requiring approval by two-thirds (2/3) of all owners who, in turn, hold two-thirds (2/3) of the percentage of interest in the common elements, or unanimous approval if the works require a special assessment (31 L.P.R.A. § 1922u(d)(1)–(4)); imposing a special assessment (31 L.P.R.A. § 1922u(f)); approving the suppression of architectural barriers that obstruct access or mobility for persons with physical disabilities (31 L.P.R.A. § 1922u(g)); approving the annual budget (31 L.P.R.A. §§ 1922v, 1922y(b) and (g)); entering into usufruct agreements (31 L.P.R.A. § 1922w); adopting agreements (31 L.P.R.A. § 1922x); approving judicial or out-of-court settlements exceeding $5,000 (31 L.P.R.A. § 1922z); acquiring insurance policies to cover general common elements, council elements, and limited common elements (31 L.P.R.A. § 1923g); applying insurance indemnity (31 L.P.R.A. § 1923h); and distributing reconstruction costs when the property is uninsured or its insurance is insufficient (31 L.P.R.A. § 1923i).

C. Discussion

The issue before the court is whether the Board of Directors' commencement of this case without the Council of Owners' prior approval constitutes "cause" for dismissal for lack of authority. The Condominium Act of 2020 does not expressly address the filing of a bankruptcy petition, confer or restrict authority to file such petitions, or specify whether the Board of Directors must obtain the Council of Owners' approval before filing a bankruptcy petition. That silence does not, by itself, resolve the question of authority. Rather, the court must consider the powers conferred upon the Board of Directors and its Chair, the role of the Council of Owners as

the supreme authority over the administration of the property, and the effect of the Council of Owners' subsequent ratification of the filing.

Article 53 entrusts the Board of Directors with the good governance, administration, and operation of the horizontal property regime, including the management of its financial affairs and the establishment of controls and procedures to safeguard the Council of Owners' assets and fulfill its obligations. See 31 L.P.R.A. § 1922y. Article 54, in turn, authorizes the Chair to represent the community, inside and outside of court, in matters affecting it, and establishes a presumption that the Chair has the Council of Owners' authorization to appear on its behalf in the pertinent forums. See 31 L.P.R.A. § 1922z. These provisions must be read together with Article 48, which recognizes the Council of Owners as the supreme authority over the administration of the property. See 31 L.P.R.A. § 1922t. The distinction between the Board of Directors' authority to represent the Council of Owners in judicial proceedings and the authority to undertake the particular action at issue is important. The presumption established by Article 54 does not render every action taken by a duly constituted Board of Directors as conclusively authorized; neither does the Board of Directors' general administrative authority displace the Council of Owners' statutory role. Likewise, the absence of an express provision requiring a vote to commence a bankruptcy case does not, standing alone, establish that the Board of Directors may do so without the authorization of the Council of Owners. The court nevertheless observes—though it is unable to give any weight because the referenced authority is in Spanish and a certified English translation was not filed—that the commentary attributed to Prof. Michel J. Godreau in the Debtor's uncertified translation describes prior approval by a council of owners as a 'best practice', while recognizing that urgent circumstances may justify initiating proceedings without it. See dkt. #55, pp. 10–11.

Nevertheless, to the extent that chapter 11 provides a means to address financial distress and preserve assets, filing a petition on behalf of the Council of Owners may further the administrative and financial responsibilities assigned to the Board of Directors. In particular, a filing undertaken to safeguard the assets of the Council of Owners, including the restoration of

essential services to the Condominium, as is the case here, supports the Board of Directors' statutory duty to administer the horizontal regime, manage its financial affairs, and protect its assets. See e.g., *Minutes of Hearing Held on August 10, 2026*, dkt. #86; *Joint Motion Between the Debtor and LUMA Energy as Per Court Order After Hearing to Consider A Motion to Dismiss [Dkt.No.86]*, dkt. #90 (detailing circumstances surrounding reconnection of electricity). See also Polish-Am. Citizen's Club Inc., 2023 WL 4259266, at *9 (B.A.P. 1st Cir. June 27, 2023) (finding that "the act of filing a bankruptcy petition may properly be viewed as an act 'facilitating the work and welfare of the Club' within the meaning of the bylaws, to the extent that bankruptcy would promote the proverbial 'fresh start' of the Club."). That reasoning supports examining the purpose and scope of an entity's governing provisions rather than treating the absence of an express reference to bankruptcy as dispositive. It does not, however, eliminate the need to determine whether the filing was authorized under the law governing this Debtor. For the reasons explained below, the court need not decide whether the Board of Directors' general statutory powers, standing alone, would have authorized the filing without prior-approval of the Council of Owners.

Here, to the extent the Board of Directors was duly elected and properly constituted—a fact which is not in dispute—their having filed a petition for relief under chapter 11 is presumed as valid. Such presumed validity is conclusively valid upon the Council of Owners' post-petition unanimous ratification and approval of the bankruptcy filing at the Special Meeting of the Owners held on May 15, 2026. See *Minutes of Special Meeting [Held on May 26, 2026]*, dkt. #55-2, pp. 4-6 (Certified Translation) (post-petition ratification and approval of bankruptcy filing). See also, e.g., Hager v. Gibson, 108 F.3d 35, 40 (4th Cir.1997) (holding that "the unauthorized filing of a voluntary petition in bankruptcy [o]n behalf of a corporation may be ratified in appropriate circumstances by ensuing conduct of persons with power to have authorized it originally" for such ratification had the effect of validating unauthorized acts); In re Council of Unit Owners of the 100 Harborview Drive Condo., 552 B.R. 84, 88 (Bankr. D. Md. 2016) (deferring its decision on the merits of a motion to dismiss to permit the council the opportunity to ratify or disapprove

the board's filing of a bankruptcy petition), *dismissal denied upon ratification*, Bankr. Case No. 16-13049 [dkt. #173] (Bankr. D. Md. September 15, 2016).[14]

The court therefore need not decide whether the Board of Directors' general statutory powers, standing alone, would have authorized the filing without approval of the Council of Owners, and declines to consider whether <u>Galerias Ponceñas</u> supports such independent authority. On this record, dismissal for "cause", i.e., lack of authority, is not warranted. Considerations of judicial economy, convenience, fairness, and comity likewise provide no support for dismissal where the Debtor has already stated that it will subsequently refile. Consequently, the *Motion to Dismiss* (dkt. #16) is hereby DENIED as the ratification by the Council of Owner, which occurred one day after the Chapter 11 bankruptcy petition was filed, validated the Board of Directors' action in filing the petition.

The issue of lack of authority to file having been addressed, the court will enter a separate order as to the request for remand. <u>See</u> Adv. Proc. No. 26-00040.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 6th day of November 2026.

Enrique S. Lamoutte
United States Bankruptcy Judge

---

[14] The bankruptcy filing of <u>100 Harborview Drive</u> was ratified by a majority vote of the council and, consequently, dismissal for lack of authority to file was denied.